## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>ZYMERGEN INC., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11661 (KBO)<br><br>(Jointly Administered)<br><br>**Hearing Date: December 19, 2023 at 11:00 a.m. (ET)**<br>**Obj. Deadline: December 12, 2023 at 4:00 p.m. (ET)** |

### SECURITIES LITIGATION CLASS REPRESENTATIVE'S OBJECTION TO APPROVAL OF THE DEBTORS' PROPOSED DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES

Biao Wang (the "Class Representative"), the court appointed lead plaintiff and class representative in the certified securities class action pending in the United States District Court for the Northern District of California (the "District Court") under the caption, *Biao Wang, Individually and on Behalf of All Others Similarly Situated, Plaintiff v. Zymergen Inc. et al., Defendant*, Case No. 21-cv-06028 (the "Securities Litigation"), for himself and on behalf of the certified class in the Securities Litigation (the "Certified Class", and, the members thereof, the "Class Members"), hereby submits this objection (the "Objection") to the motion (the "Motion") [D.I. 208] of the above-captioned debtors in possession (the "Debtors") for approval of the proposed disclosure statement (the "Disclosure Statement") [D.I. 28] and solicitation procedures (the "Solicitation Procedures") for their proposed *Joint Chapter 11 Plan of Liquidation* (as may

---

[1] The Debtors in these chapter 11 cases, along with the Debtors' federal tax identification numbers, are Zymergen Inc. (2439), Lodo Therapeutics Corporation (8730), enEvolv, Inc. (2402), and Genesis Acquisition Sub, LLC (3640). The corporate headquarters and the mailing address for the Debtors is 1440 Stanford Ave., Emeryville, California 94608.

be amended, the "<u>Plan</u>") [D.I. 27].[2]  In support of this Objection, the Class Representative

respectfully states as follows:

<u>**PRELIMINARY STATEMENT**</u>[3]

1.      The    Disclosure    Statement    lacks    adequate    information    to    advise

the Class Representative or Class Members (or creditors and interest holders, generally) of the

Plan's impact on their claims against the Non-Debtor Defendants and on the prosecution of the

Securities Litigation.  Among other things, the Disclosure Statement:

- contains only a cursory description of the Securities Litigation, which does not disclose in any detail the claims asserted in the Securities Litigation, the parties thereto, whether any Non-Debtor Defendants are "Released Parties" under the Plan, or the fact that the District Court has certified the Certified Class;

- fails to describe the scope or impact of the Third-Party Release beyond a boilerplate recitation of certain provisions of the Plan;

- fails to disclose any legitimate legal or factual basis for the Plan's deemed release of claims against the Non-Debtor Defendants by holders of claims in classes that are not entitled to vote and are receiving nothing under the Plan, who should not be burdened with the onerous obligation to review and interpret the Plan or Third-Party release;

- violates Bankruptcy Rule 3016(c) by failing to disclose the scope of the Third-Party Release and the related Injunction in the Plan, including but not limited to the specific claims and parties impacted thereby;

- does not describe whether or how the Debtors intend to preserve evidence potentially relevant to the Securities Litigation after the effective date of the Plan; and

- does not disclose whether or how the Plan preserves the claims of the Class Representative and Class Members against the Debtors to the extent of available insurance (which exists solely for such claims).

---

[2]     Notwithstanding the filing of this Objection, the Class Representative reserves all rights with respect to confirmation of the Plan, including but not limited to the right to seek any authority that may be necessary for the Class Representative to opt out of the Third-Party Release (defined below) on behalf of the Certified Class.

[3]     Capitalized terms used but not otherwise defined in this Preliminary Statement or above have the meanings ascribed to them below.

2.      The Disclosure Statement and Solicitation Procedures also cannot be approved because the Plan cannot be confirmed in its present form (although, as discussed below, the remedy is simple).  As written, the Plan attempts to release claims of Class Members against the Non-Debtor Defendants in the Securities Litigation, claims that are entitled to adjudication exclusively in an Article III court unless the Class Representative consents otherwise.  He does not, and thus those claims are outside the scope of this Court's constitutional adjudicatory authority.  The Third-Party Release attempts to victimize Class Members a second time, deeming their nonresponse to a notice of non-voting status – a mailing solicitation they have no legal obligation to answer (and that most or all Class Members likely will not even receive) – to constitute "consent" to a release of valuable claims against the Non-Debtor Defendants in exchange for absolutely nothing.  No rational, fully informed Class Member would *ever* willingly consent to such a release.  By attempting to impose upon Class Members a supposed duty to speak where none actually exists, the Third-Party Release and the opt-out mechanism the Solicitation Procedures attempt to engineer are nothing more than a *de facto* nonconsensual release with no factual or legal justification under applicable Third Circuit law.

3.      Although the Plan cannot be confirmed in its current form, the fix for that issue (in addition to several of the problems noted above and detailed below regarding the Disclosure Statement and Solicitation Procedures) is as easy as removing the Class Representative and Class Members from the definition of "Releasing Parties" under the Plan, or removing the Non-Debtor Defendants from the definition of "Released Parties" under the Plan, and expressly preserving the Class Representative's and Class Members' right to pursue the Securities Litigation against Zymergen solely to the extent of available insurance coverage.[4]

---

[4]      As an alternative, the Plan or any order granting the Motion could expressly recognize the Class Representative's inherent authority (or, to the extent necessary, grant the Class Representative authority), as class representative

**RELEVANT BACKGROUND**

A.    **The Securities Litigation**

4.    On August 4, 2021, the Securities Litigation was commenced by way of a complaint filed in the District Court against Debtor Zymergen Inc. ("Zymergen") as well as certain of Zymergen's current and former directors and officers and underwriters (collectively, the "Non-Debtor Defendants," and together with Zymergen, the "Defendants"). Following his appointment as lead plaintiff and Robbins, Geller, Rudman & Dowd LLP's ("RGRD") appointment as lead counsel by way of order entered on December 20, 2021 [*see* Securities Litigation, D.I. 69], on February 24, 2022, the Class Representative filed an amended complaint in the Securities Litigation (the "Amended Complaint") [Securities Litigation, D.I. 78].

5.    The Amended Complaint asserts causes of action for violations of the Securities Act of 1933 (the "Securities Act"). Specifically, the claims allege that Zymergen and its co-Defendant directors and officers made multiple materially untrue and misleading statements and misrepresentations regarding Zymergen's business and initial public offering, and that the non-debtor underwriter Defendants failed in their "gatekeeping role" in connection therewith, leading the investors in Zymergen's securities to suffer massive losses. *See, e.g.,* Complaint, ¶¶ 1–43, 77. Zymergen sold approximately 18,549,500 shares of common stock at $31 per share in connection with the initial public offering at issue in the Securities Litigation. *Id.* at ¶ 4.

6.    On April 25, 2022, the Defendants filed a motion to dismiss the Securities Litigation. *See* Securities Litigation, D.I. 134. On June 24, 2022, the Class Representative filed

_____

for a certified class, to opt out of the Third-Party Release on behalf of all Class Members. The Class Representative intends to file a motion for such relief or, in the alternative, to invoke Bankruptcy Rule 7023 and certify the Certified Class for the limited purpose of enabling the Class Representative to opt out on behalf of all Class Members. But the simplest solution is simply to modify the definition of Releasing Parties and preserve the Class Members' claims as set forth herein.

an opposition to the Non-Debtor Defendants motion to dismiss.  *See* Securities Litigation, D.I. 140.

7.      On October 6, 2022, the District Court held a hearing on the Non-Debtor Defendant's motion to dismiss and stated on the docket that a written ruling will be issued.  *See* Securities Litigation, D.I. 156.  On November 29, 2022, the District Court entered an order granting in part and denying in part the motion to dismiss, and all of the allegations asserted against Zymergen and the Non-Debtor Defendants remain pending in the Securities Litigation.

8.      On April 6, 2023, the Class Representative filed a motion to certify the then-proposed putative class (the "District Court Class Certification Motion") [Securities Litigation, D.I. 180].  On June 22, 2023, the Defendants, including Zymergen, filed a statement of non-opposition with respect to the District Court Class Certification Motion.  *See* Securities Litigation, Doc. 188.  On August 10, 2023, the District Court entered an order granting the District Court Class Certification Motion and thereby certifying the Certified Class in the Securities Litigation. *See* Securities Litigation, D.I. 194.

**B.      The Chapter 11 Cases and Class Proof of Claim**

9.      On October 3, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned Chapter 11 Cases before this Court.

10.     On October 31, 2023, the Court entered an order (the "Bar Date Order") [D.I. 124] establishing the deadline for all entities other than governmental units to file proofs of claim in the Chapter 11 Cases as 5:00 p.m. (ET) on the date that is thirty (30) days from the Debtors' service of the Bar Date Notice (as defined in the Bar Date Order).

11.      Accordingly, on December 11, 2023, the Class Representative timely filed proofs of claim in these Chapter 11 Cases, asserting the claims alleged in the Complaint against Zymergen on behalf of himself and on behalf of the Certified Class.

12.      In addition to filing a proof of claim on behalf of the Certified Class, the Class Representative presently intends to soon file, out of an abundance of caution, a motion for entry of an order that either (a) authorizes the Class Representative to opt out of the Third-Party Release on behalf of the entire Certified Class or (b) certifies the Certified Class under Bankruptcy Rules 7023 and 9014 for the limited purpose of permitting the Class Representative to opt out of the Third-Party Release on behalf of the entire Certified Class.  The Class Representative intends to seek such relief out of an abundance of caution, in the event that the modifications suggested by the Class Representative in connection with this Objection are not implemented.

**C.      The Plan, Disclosure Statement, Third-Party Release, and Opt-Out Mechanism**

13.      The day after the Petition Date, the Debtors filed their proposed Plan [D.I. 27], along with an accompanying Disclosure Statement [D.I. 28].

14.      On November 28, 2023, the Debtors filed the Disclosure Statement Motion [D.I. 208], which seeks approval of the Disclosure Statement and Solicitation Procedures for soliciting votes on the Plan.  The hearing to consider approval of the Disclosure Statement Motion is currently scheduled for December 19, 2023.  The hearing to consider the confirmation of the Plan is currently scheduled for January 17, 2024.

15.      Of the utmost concern to the Class Representative (and the Certified Class that he represents) is that the Plan contains a sweeping Third-Party Release of claims that numerous non-debtor "Releasing Parties" have against the Debtors and myriad of other non-Debtors, defined as "Released Parties."  *See* Plan, § 11.5.  This Third-Party Release would apply to virtually all claims

except for any claim that "results from any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, criminal acts, or gross negligence." *Id.*

16.     The "Released Parties" include:

> [C]ollectively, and in each case, solely in their respective capacities as such: (i) the Debtors; (ii) the current directors, officers, agents, members of management and other employees of the Debtors; (iii) the Wind-Down Estates; (iv) with respect to any Person or Entity in the foregoing clauses (i) through (iii), the predecessors, successors and assigns, subsidiaries, members, partners, officers, directors, agents, attorneys, advisors, accountants, financial advisors, investment bankers, consultants, and other professionals (collectively, the "Related Parties") solely in their capacity as such.

*See* Plan, § 1.A.1.73.  Therefore, due to the broad catch-all set forth in sub-part (iv) of the definition of "Released Parties," it appears that every Defendant in the Securities Litigation may be considered a Released Party under the Plan.

17.     The "Releasing Parties" deemed to grant the Third-Party Release include, among numerous others, "holders of Claims or Interests that are deemed to reject [the] Plan and do not opt out of the voluntary release contained in Section 11.5 of the Plan by checking the 'opt out' box on the Opt-Out Election Form and returning it in accordance with the instructions set forth thereon." *See* Plan, § 1.A.1.74.

18.     The members of the Certified Class are not entitled to vote on the Plan or receive any distribution or recovery under the Plan, and are treated as holders of Class 4 Subordinated Claims that are deemed to reject the Plan.  *See* Disclosure Statement, pp. 8 and 10 (briefly mentioning the Securities Litigation, stating the claims asserted in the Securities Litigation will be subordinated pursuant to section 510(b) of the Bankruptcy Code, and indicating that holders of Class 4 Subordinated Claims will not receive any distribution under the Plan).

19.     However, many Class Members likely will not receive any notice of the opportunity to opt out of the Third-Party Release, and, even in the unlikely event that they do, Class Members cannot be expected to pay much, if any, attention to the Chapter 11 Cases that completely disenfranchises them.  To ascertain whether they have claims against the Defendants in the Securities Litigation that are released by the Third-Party Release, absent Certified Class members would have to (a) in the first instance, be aware of the Chapter 11 Cases, (b) locate and review the operative version of the Plan and Disclosure Statement, (c) find and analyze the Third-Party Release provision and interpret the maze of interconnected defined terms that are necessary to understand the impact of the Third-Party Release, (d)  prepare, sign, and submit a separate Opt-Out Election Form they may be required to create on their own, and (f) do all of this before the voting deadline (where they cannot vote), after notice of receipt of the Plan and Third-Party Release (if they receive notice at all).  It is highly improbable (at best) that an absent Class Member would undergo all of these steps to purportedly "consent" to the Third-Party Release.

20.     In fact, the requirement to affirmatively opt out and the various, onerous steps that must be taken to avoid that fate prejudice even those Class Members that *do* receive notice of the Debtors' confirmation process.  The Opt-Out Election Form by which Class Members are purportedly required to affirmatively opt out of the Third-Party Release is attached to a notice of non-voting status (the "<u>Non-Voting Notice</u>"), which has the primary purpose of notifying its recipients that they are not entitled to vote on the Plan at all.  Moreover, assuming the reader of the Non-Voting Notice (e.g., a Class Member), decides to read any further than that first page (which states that the reader cannot vote on the Plan and makes no mention of any Third-Party Release), the Opt-Out Election Form is not found until reaching Exhibit C to the Non-Voting Notice –after multiple pages of merely cut-and-pasted text from Section 11 of the Plan (the section

that includes the Third-Party Release).  This is clearly intended as further engineering to give the impression of providing (but clearly not providing) some "notice" to the Class Member receiving the Non-Voting Notice that the Plan purports to release claims they may have against various non-debtors.  And yet, the Debtors are relying on this Non-Voting Notice (which will not be sent to all Class Members in the first instance) to bind all Class Members to the Third-Party Release in the Plan.

21.      The Plan and Disclosure Statement also have a number of other issues from the perspective of the Class Representative and Certified Class.  For example, the Plan (and thus, the Disclosure Statement), is unclear as to the Debtors' and/or post-confirmation Liquidation Trustee's obligation to maintain documents that are potentially relevant to the Securities Litigation.  In addition, the Plan and Disclosure Statement fail to expressly preserve the rights of the Class Representative and Certified Class to pursue the claims asserted against Zymergen solely to the extent of applicable insurance coverage.

22.      Finally, the Plan contains an injunction (the "Plan Injunction") that precludes "all holders of Claims and Interests" from "taking any actions to interfere with the implementation or Consummation of the Plan in relation to any such Claims and Interests."  *See* Plan, § 11.7(a).  The Plan Injunction further precludes any Releasing Party who may hold claims or interests against Released Parties that have been released under the Plan from commencing or continuing any action or other proceeding against "or affecting" the Debtors or any property of the Debtors or Liquidation Trust, or taking any action that "does not conform to or comply with the provisions of the Plan."  *Id.*, § 11.7(b).  This Plan Injunction may be construed as precluding any action to prosecute the claims presently or hereafter asserted on behalf of the Certified Class in connection with the Securities Litigation.

23.     In light of the foregoing and for the reasons detailed below, the Class Representative objects to approval of the Disclosure Statement and Solicitation Procedures.

## OBJECTION

24.     The Disclosure Statement and Solicitation Procedures cannot be approved in their present form, because (a) the Disclosure Statement lacks adequate disclosure regarding (i) the Securities Litigation, (ii) the Third-Party Release, (iii) the document preservation obligations of the Debtors and any of their transferees (such as the Liquidation Trust), and (iv) the preservation of the Class Representative's and Class Members' claims against Zymergen to the extent of available insurance; (b) the proposed Solicitation Procedures threaten to preordain a violation of the Certified Class's due process rights through the failure to provide them with notice of the Plan and Disclosure Statement and the engineered opt-out mechanism with respect to impaired non-voting classes; and (c) the Plan does not require the Debtors or Liquidation Trust to preserve documents potentially relevant to the Securities Litigations post-confirmation.

## I.     THE DISCLOSURE STATEMENT CANNOT BE APPROVED BECAUSE IT DOES NOT CONTAIN ADEQUATE INFORMATION.

25.     A chapter 11 debtor may only solicit votes to accept or reject a chapter 11 plan of reorganization once the court has approved the debtor's written disclosure statement for that plan as containing "adequate information."  11 U.S.C. § 1125(b).  The Bankruptcy Code defines "adequate information" as

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to . . . a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan[.]

11 U.S.C. § 1125(a).

26.     The Third Circuit has emphasized the importance of adequate disclosure, stating that, given the reliance creditors and bankruptcy courts place on disclosure statements, "we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'"  *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988).  Although courts assess adequacy on a case-by-case basis, a disclosure statement must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible . . . alternatives so that [creditors] can intelligently accept or reject the Plan."  *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).  In essence, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution."  *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

27.     The information presented in a disclosure statement should not be interpretive, speculative, or opinion, but instead must be "uncontested, concrete facts" from which voting claimants can make their own informed decisions how to vote.  *See In re Zenith Elecs. Corp.*, 241 B.R. 92, 99–100 (Bankr. D. Del. 1999); *see also In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987); *In re Ligon*, 50 B.R. 127, 130 (Bankr. M.D. Tenn. 1985); *In re Egan*, 33 B.R. 672, 675–76 (Bankr. N.D. Ill. 1983); *In re Civitella*, 15 B.R. 206, 208 (Bankr. E.D. Pa. 1981).

28.     Because the Disclosure Statement does not provide adequate information, particularly with respect to issues relevant to the members of the Certified Class (to the extent they are aware of the Disclosure Statement and these Chapter 11 Cases in any event), the Disclosure Statement cannot be approved.

A.     **The Disclosure Statement does not contain an adequate description of the Securities Litigation or the claims asserted therein.**

29.     The Securities Litigation involves serious and substantial claims against Zymergen and the Non-Debtor Defendants.  Despite being aware of – and participating in – the Securities Litigation since its inception, and despite effectively seeking a final judgment dismissing the claims asserted in the Securities Litigation without prejudice by way of the Third-Party Release, the Debtors fail to meaningfully describe the Securities Litigation in the Disclosure Statement such that Class Members (to the extent they are aware of the Chapter 11 Cases and Disclosure Statement to begin with) could potentially ascertain the impact the Third-Party Release may have on them.  For example, the Disclosure Statement does not identify any of the Non-Debtor Defendants, does not disclose that the Certified Class has been certified by the District Court, and provides no information by which Class Members could determine whether they may, in fact, be Class Members (e.g., the relevant class period).  *See* Disclosure Statement, p. 10.

30.     Class Members are entitled to be advised of the information necessary to make an informed decision regarding the Third-Party Release, to the extent possible.  *See In re Bally Total Fitness of Greater N.Y., Inc.*, No. 07-12395 (BRL), 2007 Bankr. Lexis 4729, at *22–23 (Bankr. S.D.N.Y. Sept. 17, 2007) (taking into account pending litigation when determining feasibility of a Plan).  Yet, the Disclosure Statement falls far short of providing such information.  As such, the Disclosure Statement cannot be approved.

B.     **The Disclosure Statement does not provide adequate information regarding the Third-Party Release and Plan Injunction.**

31.     The Disclosure Statement is also fatally flawed because it fails to adequately describe the impact the proposed Plan will have on the claims asserted on behalf of the Certified Class in the Securities Litigation.  Despite the draconian impact the Third-Party Release and Plan

Injunction will have on Class Members, the Disclosure Statement utterly fails to explain that, if approved and not affirmatively opted out of, the Third-Party Release will eviscerate the Class Members' claims against Zymergen and the Non-Debtor Defendants.

> **(i)      *The Disclosure Statement fails to provide any legal or factual basis for the Third-Party Release or the Plan Injunction, as applied to Class Members.***

32.      As discussed further below (e.g., in Section II of this Objection), there is no legitimate factual or legal basis for the Debtors' failure to expressly exclude the Non-Debtor Defendants, and the direct claims of the Class Representative and Certified Class against the Non-Debtor Defendants, from the scope of the Third-Party Release.

33.      Moreover, if the Non-Debtor Defendants are Released Parties, the Third-Party Release may operate as an impermissible *de facto* final judgment dismissing the claims of the Class Representative and Certified Class against the Non-Debtor Defendants, even though those claims *cannot* be adjudicated outside of the District Court unless the Class Representative and Certified Class consent to Bankruptcy Court adjudication.  The Class Representative and Certified Class do not, and will not, consent to this Court's adjudication (or *de facto* adjudication through the Third-Party Release) of their claims against the Non-Debtor Defendants in the Securities Litigation.  Despite these glaring flaws, the Disclosure Statement does not even attempt to provide any justification for the gratuitous Third-Party Release – because one does not exist.  Explicitly excluding the Non-Debtor Defendants from the definition of Released Parties, and excluding the claims of the Class Representative and Certified Class against the Non-Debtor Defendants from the scope of the Third-Party Release, would eliminate this issue.

> ### *(ii)* *The Disclosure Statement violates Bankruptcy Rule 3016(c) by failing to adequately disclose the scope of the Third-Party Release and Plan Injunction.*

34.     Bankruptcy Rule 3016(c) provides that

> [i]f a plan provides for an injunction against conduct not otherwise enjoined under the [Bankruptcy] Code, the plan and disclosure statement shall describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction.

Fed. R. Bankr. P. 3016(c); *see also In re Lower Bucks Hosp.*, 471 B.R. 419, 460 (Bankr. E.D. Pa. 2012).

35.     The *Lower Bucks* court noted that although Bankruptcy Rule 3016(c) purports to address only injunctions, "[i]ts purpose is to alert parties in interest that the plan purports to restrict their rights in ways that ordinarily would not result from confirmation of a plan." *Lower Bucks*, 471 B.R. at 460.  "Whether 'enjoined' or merely 'released,' in this case, the Plan was designed to deprive [third parties] of their right to prosecute a claim against a non-debtor." *Id.*  Thus, Bankruptcy Rule 3016(c) applies to the presentation of both the Third-Party Release and the Plan Injunction in the Plan and Disclosure Statement.  *See id.*

36.     As a glaring example, the Disclosure Statement does not make specific reference to the fact that the Third-Party Release and Plan Injunction might release and enjoin the prosecution of the claims asserted against the Non-Debtor Defendants in the Securities Litigation, claims of which the Debtors are well aware.  Even if an absent member of the Certified Class was somehow aware of the Plan and located and reviewed the Disclosure Statement, there is nothing whatsoever in the Disclosure Statement to inform that Class member of the potential impact the Third-Party Release and Plan Injunction could have on his, her, or its claims against the Non-Debtor Defendants.

37.     Rather, to ascertain the types of claims the Third-Party Release would release, and therefore, that the Plan Injunction would bar after the effective date of the Plan, an absent Class Member must first ascertain whether a particular claim or remedy is one released pursuant to the Plan.  If the answer to that inquiry is "yes," then the Plan Injunction would enjoin the creditor from asserting the claim.  Here, the analysis is remarkably convoluted.  To ascertain whether a claim has been released under the Plan, a creditor must determine (a) that the creditor holds a claim against a non-Debtor in the first instance, (b) whether that claim is among the potential categories of claims listed in the Disclosure Statement, and (c) whether the party against whom they seek to assert the claim is a "Released Party," a definition with no explanatory disclosure in the Disclosure Statement.

38.     It is essentially impossible for members of the Certified Class, many of whom are likely not even aware that they might have claims against Zymergen or the Non-Debtor Defendants, to ascertain from the Disclosure Statement the full universe of Released Parties and claims impacted by the Third-Party Release and the Plan Injunction.  The exercise is daunting even after an exhaustive analysis of the Plan.  A Class Member, or any other creditor for that matter, likely will have no idea what claims against non-Debtors are impacted by the Third-Party Release, particularly where the definition of "Released Parties" identifies such parties (other than the Debtors) solely by category and where the Disclosure Statement makes no effort to explain the Third-Party Release or the Plan Injunction.

39.     Absent appropriate revisions to the Disclosure Statement and Plan to remedy the defects and issues relating to the scope and appropriateness of the Third-Party Release and Plan Injunction, the Disclosure Statement and Solicitation Procedures should not be approved.  But in

any event, the fatal defects in the Third-Party Release cannot be cured simply by additional disclosure, for the reasons set forth in Section II of this Objection below.

      **C.    The Disclosure Statement does not disclose whether or how the Debtors intend to preserve evidence potentially relevant to the Securities Litigation after the effective date of the Plan.**

    40.    Certain of the Debtors were named as defendants in the Securities Litigation prior to the filing of the Chapter 11 Cases. Zymergen currently remains a defendant, although the automatic stay under section 362 of the Bankruptcy Code prevents the continued prosecution of the Securities Litigation against Zymergen. As a party to the Securities Litigation, Zymergen is obligated to preserve evidence relevant to the Securities Litigation. *See, e.g.*, Fed. R. Civ. P. 37(e) (defining remedies for failure to preserve electronically stored information that should have been preserved in anticipation of litigation); *see also Cignex Datamatics, Inc. v. Lam Rsch. Corp.*, C.A. No. 17-320 (MN), 2019 WL 1118099, at *2 (D. Del. Mar. 11, 2019); *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'") (emphasis in original) (quoting *U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)).

    41.    As the current and/or former employer of the non-Debtor Defendants, the Debtors undoubtedly have books, records, electronically stored information, and other evidence potentially relevant to the Securities Litigation in their possession, custody, and/or control (the "Potentially Relevant Books and Records").

    42.    The Securities Litigation is subject to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, which mandates that

        any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including

electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(b)(3)(C)(i). This mandatory requirement is subject to "sanction for willful violation." 15 U.S.C. § 78u-4(b)(3)(C)(ii).

43. The Debtors, as Defendants and an active participant before the Petition Date, are subject to the document preservation requirements under the PSLRA. Preservation of the Potentially Relevant Books and Records is absolutely crucial to avoid prejudice to the Class Representative and Certified Class, which prejudice would be magnified if the fact that the Debtors filed for bankruptcy protection were to obviate the Debtors' document preservation obligations under the PSLRA.

44. Notwithstanding the Debtors' duty to preserve evidence that is potentially relevant to the Securities Litigation, the Plan does not (i) contain any requirement that the Post-Effective Date Debtors or any custodian of documents take any action to preserve evidence potentially relevant to the Securities Litigation for the duration of the Securities Litigation or require notice to the Class Representative of any proposed destruction or other disposition of any Potentially Relevant Books and Records, or (ii) explain what, if any, measures the Post-Effective Date Debtors will implement to ensure such evidence is retained and preserved through the completion of the Securities Litigation.

45. To resolve this issue, the Plan, or any other plan put forth for a vote in these Chapter 11 Cases, should provide as follows, along with related disclosures in the accompanying Disclosure Statement:

- **<u>Document Preservation.</u>** Until the entry of a final order of judgment or settlement in the securities class action pending in the United States District Court for the Northern District of California under the caption,

*Biao Wang, Individually and on Behalf of All Others Similarly Situated, Plaintiff v. Zymergen Inc. et al., Defendant*, Case No. 21-cv-06028 (the "<u>Securities Litigation</u>"), the Debtors and any other transferee of the Debtors' books, records, documents, files, electronic data (in whatever format, including native format), or any tangible object potentially relevant to the Securities Litigation, wherever stored (collectively, the "<u>Potentially Relevant Books and Records</u>") shall preserve and maintain the Potentially Relevant Books and Records, and shall not destroy, abandon, transfer, or otherwise render unavailable any Potentially Relevant Books and Records without providing counsel to the class representative in the Securities Litigation at least sixty (60) days' advance written notice and an opportunity to object and be heard by a court of competent jurisdiction.  In the event the class representative in the Securities Litigation timely objects to any such destruction, abandonment, or transfer, the Potentially Relevant Books and Records shall be preserved until the earlier of (a) a final order of the Bankruptcy Court or other court of competent jurisdiction and (b) the date the party in possession, custody, or control of such Potentially Relevant Books and Records provides originals or true copies thereof to counsel for the class representative.

46.     Absent the foregoing language or a substantially similar provision, the Plan creates the risk of irreparable harm to the Class Representative and Certified Class and cannot be confirmed.

**D.      The Disclosure Statement does not disclose whether the Plan will preserve claims of the Class Representative and Class Members against the Debtors to the extent of available insurance.**

47.     The Debtors' prepetition directors' and officers' liability insurance policies are left intact by the Plan and deemed assumed to the extent they are executory contracts.  *See* Plan, § 6.7. Thus, the claims the Class Representative and Certified Class have against Zymergen should remain unaffected to the extent a recovery is available from available insurance.  However, the Disclosure Statement does not explain whether or how the Plan would permit the Class Representative or Certified Class to access coverage under such policies in connection with their claims against Zymergen to the extent of available insurance coverage, which would have no impact on the Debtors' estates.

48.     This issue must be resolved, irrespective of the outcome of the Class Representative's objection to the Third-Party Release (set forth in Section II of this Objection, below).  Accordingly, the Plan and the Disclosure Statement should provide that:

> Nothing in the Plan, or in any Order confirming the Plan, shall preclude the Class Representative and Certified Class from pursuing their claims against the Debtor, Zymergen Inc., solely to the extent of available insurance coverage and proceeds.  The claims asserted by Class Representative and Certified Class against the Zymergen Inc., to the extent of available insurance, are preserved and not discharged by the Plan.

## II.     THE DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES SHOULD NOT BE APPROVED BECAUSE THE PLAN CANNOT BE CONFIRMED IN ITS PRESENT FORM DUE TO THE IMPACT THE PROPOSED THIRD-PARTY RELEASE WILL HAVE ON THE CLAIMS ASSERTED IN THE SECURITIES LITIGATION.

49.     Notwithstanding the foregoing, no amount of additional disclosure or notice can address the chief deficiency in the Plan, Disclosure Statement, and Solicitation Procedures – the attempt to preemptively impose an obligation on holders of claims and interests in impaired, non-voting classes (e.g., Class Members, whose claims are classified as Class 4 Subordinated Claims) to read anything pertaining to the Plan or take any affirmative measures whatsoever to protect their rights against the Non-Debtor Defendants (a sweeping list of entities and related entities).  Indeed, if the Solicitation Procedures are approved as presently proposed, they will set in motion a mechanism engineered and intended to deprive the Class Representative and members of the Certified Class, who are receiving nothing under the Plan and are not entitled to vote, of their fundamental right to procedural due process.  The Debtors cannot explain away a due process failure through any amount of incremental disclosure in the Disclosure Statement.  Accordingly, unless the modifications proposed by the Class Representative below are implemented, the Disclosure Statement and Solicitation Procedures should not be approved.

**A.      The Plan and Disclosure Statement must be modified to expressly exclude the claims asserted in the Securities Litigation from the scope of the Third-Party Release and Plan Injunction, because otherwise they constitute an impermissible non-consensual release.**

50.     A disclosure statement describing a plan that cannot be confirmed cannot be approved, regardless of the amount of disclosure it contains.  *See, e.g.*, *In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012); *see also In re Beyond.com Corp.*, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003) (denying approval of disclosure statement where plan could not be confirmed); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) ("If the disclosure statement describes a plan that is so 'fatally flawed' that confirmation is 'impossible,' the court should exercise its discretion to refuse to consider the adequacy of disclosures.") (citations omitted).  The purpose behind this rule is pure common sense:  Courts will not permit a bankruptcy estate to incur the costs of soliciting votes for a plan that, even if unanimously accepted by creditors, could never be confirmed.  *See, e.g.*, *In re American Capital Equipment, LLC*, 688 F.3d 145, 154 (3d Cir. 2012) ("[A] bankruptcy court may address the issue of plan confirmation where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile . . . ."); *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986) ("If, on the face of the plan, the plan could not be confirmed, then the court will not subject the estate to the expense of soliciting votes and seeking confirmation.").

51.     Such is the case here.  The Plan cannot be confirmed in its present form even with additional disclosures, because the Third-Party Release is improper to the extent it purports to release direct claims of the Class Representative and Certified Class.  Class Members are entitled to have their claims – which arise under a separate federal statutory scheme – adjudicated by an Article III Court.  The Third-Party Release short-circuits that constitutional right and threatens to strip the Class Representative and members of the Certified Class, for no consideration

whatsoever, of their only source of compensation for Zymergen's and the Non-Debtor Defendants' wrongdoings – the Securities Litigation.  As discussed below, this Court lacks constitutional and/or statutory authority to release the claims asserted in the Securities Litigation against the Non-Debtor Defendants and, in any event, there is no factual or legal basis for such a release.

52.     To the extent that the Plan releases prepetition claims and causes of action against non-debtor third parties, such releases are improper under sections 524(e) and 1141(d)(3) of the Bankruptcy Code.  In the Third Circuit, third party releases are appropriate only in extraordinary cases where the debtor is reorganizing (not liquidating, as is the case here), and the third parties receiving the releases provide substantial consideration to the parties that are enjoined (creditors) for the loss of their rights against the non-debtors.  *In re Continental Airlines Holdings, Inc.*, 203 F.3d 203, 212 (3d Cir. 2000); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999).  In *Continental*, the Third Circuit indicated that a nonconsensual third-party release must be (i) fair, (ii) essential to the reorganization, and (iii) accompanied by specific factual findings supporting its fairness and essential nature.  *In re Continental Airlines Holdings, Inc.*, 203 F.3d at 214.

53.     As applied to the Class Representative and Certified Class, the opt-out provision in the Plan and Solicitation Procedures, and the illusory "consent" supposedly created thereby, effectively render the Third-Party Release a *de facto* nonconsensual release.  There is no better evidence of the fact that the Third-Party Release is nonconsensual than the burden imposed on Class Members to fully comprehend its impact, decipher the maze of related Plan provisions, and successfully opt out of it.  To do so, each member of the Class would have to:

- Know of the existence, and relevance to the Class Member, of the Securities Litigation to begin with;

- Know of the existence, and the relevance to the Class Member, of the Chapter 11 Cases and the Debtors' proposed Plan and confirmation process (of which the Debtors may have provided no notice at all)
- Understand the confirmation process and grasp the possibility that the claims asserted on the Class Member's behalf in the Securities Litigation are impacted by the Debtors' proposed Plan and Third-Party Release (and do so despite that there is no plain-English explanation of the Third-Party Release and relevant defined terms in the Opt-Out Election Form, Disclosure Statement, or any other relevant solicitation materials);

- Scrupulously comb through and interpret the complex interrelated provisions and defined terms in the Disclosure Statement and/or Plan to ascertain that the Class Member's securities claims against the non-Debtor Defendants are potentially released under the Third-Party Release; and

- Affirmatively opt-out of the Third-Party Release.

54.    The notion that Class Members would voluntarily consent to a Third-Party Release of claims against the Non-Debtor Defendants without being given any consideration for that release is specious, at best. *Cf. In re SunEdison, Inc.*, 576 B.R. 453, 460 (Bankr. S.D.N.Y. 2017) (finding chapter 11 debtors' argument that silence by holders of claims – even those who were entitled to vote but did not vote – should be deemed consent to a third-party release was "not persuasive because the Debtors have not identified the source of their duty to speak"); *In re Chassix Holdings, Inc.*, 533 B.R. 64, 78 (Bankr. S.D.N.Y. 2015) (finding that procedures where a party is deemed to consent by failing to opt out of a third-party release "is to some extent a legal fiction"). Members of the Certified Class – to the extent they are even aware of the Plan or the Chapter 11 Cases at all – have no reason to know they must find and decipher a convoluted Third Party Release whose operative mechanics are spread across multiple Plan provisions. As noted by Judge Wiles in *In re Chassix Holdings, Inc.*, the proposed opt-out mechanism is simply a means of engineering illusory "consent" to a release where no rational member of the Class would ever knowingly or voluntarily consent at all. *Id.*; *see also In re Wash. Mut.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011)

(holding that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (or are not entitled to vote in the first place") and that "[f]ailing to return a ballot is not a sufficient manifestation of consent to a third party release").

55.    Likewise, here, there is no reason why a fully informed Class Member would voluntarily relinquish its right to damages on account of the claims asserted in the Securities Litigation.  Burying an Opt-Out Election Form nearly ten pages into a Non-Voting Notice that does not clearly state on its face that the Class Members' claims will be released under the Plan unless they complete and return the Opt-Out Election Form simply cannot be construed as obtaining Class Members' consent to the Third-Party Release.

56.    Given the Third-Party Release is clearly not consensual (at least with respect to the Class Representative and members of the Certified Class), the Debtors must meet the criteria set forth in *Continental*.  Clearly, they cannot, since the Third-Party Release is neither fair nor essential to the Debtors' reorganization.  The Debtors have made no effort to even approach that standard.  The Debtors are seeking confirmation of a *liquidating* Plan under which the members of the Certified Class are receiving nothing and the Non-Debtor Defendants are providing nothing.  Quite simply, if the Third-Party Release were to release the claims asserted in the Securities Litigation against the Non-Debtor Defendants, the release would be both highly prejudicial and entirely gratuitous, while serving no legitimate purpose in furtherance of the Plan – the antithesis of the "fair and necessary" touchstone identified in *Continental*.  *See, e.g., In re Tricida, Inc.*, Case No. 23-10024-JTD (Bankr. D. Del.), Transcript of Hearing Held Feb. 27, 2023 (the "Tricida Transcript"), at 43:4-8 (Judge Dorsey stating during disclosure statement hearing, "I don't see how [the third party releases] benefit anyone other than the officers and directors of the company . . . if

the only thing you're going to tell me at confirmation is they did their job, that's not enough. That's just not enough under the case law.").[5]

57.      Bottom line, the Third-Party Release renders the Plan unconfirmable because this Court lacks jurisdiction, constitutional adjudicatory authority, or both to release any direct, non-bankruptcy, non-core claims asserted by the Class Representative on behalf of the Certified Class against the Non-Debtor Defendants in the Securities Litigation under the circumstances here.  The Class Representative and Certified Class are constitutionally entitled to adjudication of those claims in an Article III tribunal (the District Court), and thus they cannot be released or otherwise adjudicated by this Court.

58.      In addition, as described above, the Plan Injunction enjoins any holder of claims or interests from initiating or continuing any action or proceeding of any nature on such claims or interests against the Released Parties.   However, under Third Circuit precedent, to show appropriateness of the Plan Injunction of claims under Section 105(a) of the Bankruptcy Code, the Debtors must show with specificity that the Plan Injunction is necessary to reorganization and fair – yet the Disclosure Statement and Plan are silent on this.  *In re Millennium Lab Holdings II, LLC*, 591 B.R. 559, 584, *aff'd sub nom. In re Millennium Lab Holdings II, LLC.*, 945 F.3d 126 (3d Cir. 2019).

59.      Where the Class Representative and the Certified Class already face significant prejudice and are receiving zero economic benefit under the Plan, the Plan should not preclude them from pursuing their only source of recovery. The most elegant solution to rectify the issues with the Third-Party Release and Plan Injunction is to explicitly exclude Class Representative, Certified Class, and the claims asserted against the Non-Debtor Defendants in the Securities

---

[5]      The relevant pages of the Tricida Transcript are attached hereto as **Exhibit A**.

Litigation from the Third-Party Release and the Plan Injunction.  Absent such modifications, the

Disclosure Statement should not be approved.

60.    To that end, the Class Representative submits that the Class Representative and

Certified Class must be excluded from the definition of "Releasing Parties" under the Plan.

Alternatively, the following should be added to the Plan's definition of "Released Parties" to

clarify that the Non-Debtor Defendants, in their capacity as such, are not Released Parties, as

follows:

> ; provided that the non-Debtor defendants now or hereafter named in the
> securities class action captioned as *Biao Wang, Individually and on Behalf
> of All Others Similarly Situated, Plaintiff v. Zymergen Inc. et al., Defendant*,
> Case No. 21-cv-06028, pending in the United States District Court for the
> Northern District of California, in their capacity as such, shall not be
> Released Parties.

61.    Further, for the avoidance of any doubt or ambiguity otherwise created by the

language of the Third-Party Release, the Plan should expressly indicate as follows, with a

corresponding disclosure in the Disclosure Statement:

> Notwithstanding anything to the contrary in this Plan or the Confirmation
> Order, nothing herein or therein does, shall, or may be construed to release,
> enjoin, or otherwise adversely impact the claims and causes of action
> asserted against any non-Debtor defendant now or hereafter named in the
> securities class action captioned as *Biao Wang, Individually and on Behalf
> of All Others Similarly Situated, Plaintiff v. Zymergen Inc. et al., Defendant*,
> Case No. 21-cv-06028, pending in the United States District Court for the
> Northern District of California.

62.    Absent the foregoing revisions, the Plan is not confirmable and therefore the

Disclosure Statement and Solicitation Procedures cannot not be approved.

**B.    The Solicitation Procedures and Plan must be modified to Acknowledge the
Class Representative's authority to opt out of the Third-Party Release on
behalf of the entire Certified Class.**

63.    If the opt-out mechanism and the Third-Party Release as drafted remains in place,

the Solicitation Procedures and Plan must expressly recognize the Class Representative's authority

to opt out of the Third-Party Release on behalf of the Certified Class. The Class Representative, like all class representatives in federal class-action litigation, is a fiduciary for all absent Certified Class members.  *See, e.g.*, *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) ("Class representatives are . . . fiduciaries of the class members. . . ."); *Schick v. Berg*, No. 03 Civ. 5513 (LBS), 2004 WL 856298, *4 (S.D.N.Y. Apr. 20, 2004), *aff'd,* 430 F.3d 112 (2d Cir. 2005) ("The general rule is that the named plaintiff and counsel bringing the action stand as fiduciaries for the entire class, commencing with the filing of a class complaint" (citation omitted)); *c.f. In re Gen. Motors Corp. Pick-Up Truck Fuel Prod. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995) ("Beyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed.").

64.     Therefore, the Class Representative not only has the ability to take necessary actions to protect the rights of absent members of the Certified Class, *he has an affirmative obligation to do so*.  Nowhere are these duties more essential than in connection with the Third-Party Release, which threatens to eviscerate the claims of the entire Certified Class against the solvent, insured Non-Debtor Defendants.  Accordingly, the Court should find in any order approving the Disclosure Statement and Plan that the Class Representative has inherent authority (or, absent such a finding, expressly authorize the Class Representative) to opt out of the Third-Party Release on behalf of the entire Certified Class.

65.     Such a finding is also consistent with the Class Representative's inherent powers as a class representative in a class action proceeding, especially where the Certified Class has been certified.  A finding consistent with, and in furtherance of, the routine activities of a certified Class Representative does not expand upon Class Members' rights in any way, nor does it prejudice the Debtors – it simply enables the Class Representative to do what he is obligated to do to fulfill his

duties under Fed. R. Civ. P. 23 and the PSLRA, and to take the necessary steps to preserve rights that Certified Class members, under the circumstances, are in no position to protect by themselves.[6] By opting out of the Third-Party Release on behalf of the entire Certified Class, the Class Representative will prevent the Debtors from artificially "deeming 'consent' to exist in situations where no affirmative consent ha[s] actually been manifested," where, if given the option to affirmatively consent, no rational class member would ever consent at all. *See Chassix*, 533 B.R. at 78. Recognizing the Class Representative's ability to opt out on behalf of the Certified Class will preserve and protect the rights and claims of Class Members so they can decide for themselves whether to participate in the Securities Litigation when the time comes.

## RESERVATION OF RIGHTS

66.     Neither the filing of this Objection nor anything contained herein are intended to limit, prejudice, or otherwise impact any rights of the Class Representative or Certified Class in connection with the filing, solicitation, or confirmation of the Plan (or any other plan) or approval of the Disclosure Statement and the Solicitation Procedures. The Class Representative, on behalf of himself and the Certified Class, hereby reserves all such rights, including but not limited to the rights to (a) object on any and all grounds to (i) approval of the disclosure statement and solicitation procedures for any plan and (ii) confirmation of any plan, (b) vote on any plan, and take any other action permitted or required under the Bankruptcy Code and other applicable law, on behalf of himself and the Certified Class, and (c) seek, on behalf of himself and the Certified

---

[6]     As noted above, the Class Representative intends to soon file, out of an abundance of caution, a motion for entry of an order (i) recognizing the Class Representative's inherent authority (or, to the extent necessary, grant the Class Representative authority) to opt out of the Third-Party Release on behalf of the entire Certified Class or, alternatively, (ii) certifying the Certified Class in these Chapter 11 Cases for the limited purpose of enabling the Class Representative to opt out of the Third-Party Release on behalf of the entire Certified Class. However, the Class Representative requests that the Court simply recognize the Class Representative's inherent authority to opt out on behalf of all Class Members in connection with this Objection.

Class, any other relief in connection with the foregoing, including, without limitation, authority to opt out of the Third-Party Release on behalf of the Certified Class.

67.    For the avoidance of doubt, this Objection does not, shall not, and shall not be deemed to:

- constitute a submission by the Class Representative, either individually or for the Certified Class or any member thereof, to the jurisdiction of the Bankruptcy Court;

- constitute consent by the Class Representative, either individually or for the Certified Class or any member thereof, to entry by the Bankruptcy Court of any final order in any non-core proceeding, **which consent is hereby withheld unless, and solely to the extent, expressly granted in the future with respect to a specific matter**; or

- waive any substantive or procedural rights of the Class Representative or the Certified Class or any member thereof, including but not limited to (a) the right to challenge the constitutional authority of the Bankruptcy Court to enter a final order or judgment on any matter, (b) the right to have final orders in non-core matters entered only after de novo review by a District Court judge, (c) the right to trial by jury in any proceedings so triable herein, in the Debtors' Chapter 11 Cases, including all adversary proceedings and other related cases and proceedings (collectively, "Related Proceedings"), in the Securities Litigation, or in any other case, controversy, or proceeding related to or arising from the Debtors, their chapter 11 cases, any Related Proceedings, or the Securities Litigation, (d) the right to have the reference withdrawn by a United States District Court in any matter subject to mandatory or discretionary withdrawal, or (e) all other rights, claims, actions, arguments, counterarguments, defenses, setoffs, or recoupments to which the Class Representative or the Certified Class or any member thereof are or may be entitled under agreements, at law, in equity, or otherwise, all of which rights, claims, actions, arguments, counterarguments, defenses, setoffs, and recoupments are expressly reserved.

68.    **For the avoidance of doubt, the Class Representative, on behalf of himself and the Certified Class and the members thereof, does not consent, and expressly objects, to (a) the Third Party Release and Plan Injunction and (b) this Court's entry of any final order or judgment that this Court lacks jurisdiction or statutory and/or constitutional adjudicatory**

**authority to enter without the affirmative and knowing consent of all parties affected thereby. The Class Representative, on behalf of himself and the Certified Class and the members thereof, further reserves all rights to object to confirmation of the Plan, or any other plan proposed in the Chapter 11 Cases, on any basis, including but not limited to the fact that the Court lacks constitutional adjudicatory authority pursuant to *Stern v. Marshall*, 564 U.S. 462 (2011), and its progeny to approve a release of the claims of the Class Representative and the Certified Class against the Non-Debtor Defendants.**

## CONCLUSION

69.    For the foregoing reasons, the Class Representative respectfully submits that the Disclosure Statement and Solicitation Procedures should not be approved unless the Plan, Disclosure Statement, and Solicitation Procedures are revised to address the infirmities raised in this Objection.

*[Remainder of page intentionally left blank]*

Dated: December 12, 2023
Wilmington, Delaware

**CROSS & SIMON, LLC**

*/s/ Christopher P. Simon*
Christopher P. Simon (No. 3697)
1105 North Market Street, Suite 901
Wilmington, DE 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
E-mail: csimon@crosslaw.com

- and -

**LOWENSTEIN SANDLER LLP**
Michael S. Etkin, Esq.
Andrew Behlmann, Esq.
Michael Papandrea, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone 973-597-2500
E-mail: metkin@lowenstein.com
E-mail: abehlmann@lowenstein.com
E-mail: mpapandrea@lowentein.com

*Bankruptcy Counsel to the Securities Litigation*
*Class Representative and Certified Class*

**ROBBINS, GELLER, RUDMAN & DOWD LLP**
Shawn Williams, Esq.
Daniel J. Pfefferbaum, Esq.
Post Montgomery Center
One Montgomery Street
Suite 1800
San Francisco, CA 94104
Telephone: (415) 288-4545
Facsimile: (415) 288-4534
E-mail: shawnw@rgrdlaw.com
E-mail: dpfefferbaum@rgrdlaw.com

*Lead Counsel to the Securities Litigation*
*Class Representative and Certified Class*