**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) **Chapter 11** |
|  | ) |
| **ZYMERGEN, INC. et. al.,** | ) **Case No. 23-11661 (KBO)** |
|  | ) |
| Debtors. | ) **(Jointly Administered)** |
|  | ) |
|  | ) **Plan Hearing Date: February 5, 2024 at 10:00 AM** |
|  | ) |
|  | ) **Docket Nos. 5, 203, 233, 257, 259, 266-1, 293, 329** |
|  | ) |

**ORACLE'S CONTINUING OBJECTION TO AND RESERVATION OF RIGHTS**
**REGARDING: (1) DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF**
**LIQUIDATION; AND (2) NOTICE OF FILING OF CLOSING ASSIGNED**
**CONTRACTS; AND ORACLE'S REQUEST FOR CURE HEARING**

Oracle America, Inc., successor in interest to NetSuite, Inc. ("Oracle"), a creditor and contract counter-party in the above-captioned Chapter 11 case, submits this objection to, and reservation of rights ("Objection") regarding, the *First Amended Joint Chapter 11 Plan of Liquidation* ("Plan") [Dkt. No. 266-1] filed by Zymergen, Inc, et al. ("Debtors"), which became necessary only as a result of Debtors' Notice of Filing of Closing Assigned Contracts (defined below) filed on Jan. 24th. Oracle also requests its anticipated cure hearing with respect to *Oracle's Limited Objection to and Reservation of Rights Regarding Debtors' Sale Motion and Related Notice of (I) Possible Treatment of Contracts and Leases, (II) Fixing of Cure Amounts, and (II) Deadline to Object Thereto* ("Rights Reservation") [Dkt. No. 233].

I.     **INTRODUCTION**

1.     Oracle's agreements are, or pertain to, licenses of intellectual property that are not assignable absent Oracle's consent, pursuant to both the underlying license agreements and applicable law.

2.      Oracle and the Debtors are parties to several agreements pursuant to which the Debtors license Oracle software and obtain related services.

3.      In connection with the Sale Motion (defined below), the Debtors sought Bankruptcy Court authority to, among other things, assume and assign an executory contract between the Debtors and Oracle.

4.      The Debtors' Initial Assumption Notice (defined below), identified an executory contract between Oracle and the Debtors.

5.      Oracle timely filed its Rights Reservation objecting on multiple grounds to the assumption and assignment of its contracts.

6.      The Sale Motion hearing was held on December 19, 2023. The Debtors' *Notice of Agenda for Hearing Scheduled for December 19, 2023* [Dkt No. 257] ("Agenda") and Debtors' *Amended Notice of Agenda for Hearing Scheduled for December 19, 2023 at 11:00 A.M. (Eastern Time)* ("Amended Agenda") [Dkt. No. 259], both of which acknowledged receipt of Oracle's Rights Reservation and cure objection, but both of which also stated as follows: "the successful bidders have not indicated an intention to assume any of the contracts that are the subject of a cure objection. Therefore the cure objections are moot. A hearing with respect to objections to the Debtors' cure notices will take place at a later date if necessary." Again, both the Debtors' Agenda and the Amended Agenda noted that a hearing on all objections to cure notices would be set at a later date, if necessary.

7.      Two days after the Sale Motion hearing and almost immediately after entry of the sale order, the Debtors filed a Supplemental Notice (defined below) which changed the wording of the Oracle contract designations, but did not address the multiple concerns raised in Oracle's Rights Reservation, all of which persisted.

8.      The Debtors also filed the Plan which provides for all executory contracts not previously rejected, assumed, or assumed and assigned, to be rejected by default.

9.      After the Sale Motion hearing, Oracle's counsel made multiple intervening attempts to discuss, and obtain clarity from, Debtors' counsel regarding which contracts, if any, the Debtors intended to assume and assign.

10.     Since no hearing on Oracle's Rights Reservation was set pursuant to the representation in the Agenda and Amended Agenda, and Oracle's interim calls to Debtors' counsel on Dec. 28th and January 22nd seeking clarification were not returned, Oracle concluded that its contracts now were being rejected by the default provision of the Plan.

11.     Until Jan. 24th, Oracle never received a substantive response (i.e., the day objections to the Plan were due, and coincident with the Assigned Contract Notice's filing). Debtors' counsel then first advised Oracle of Debtors' intent to reject the Oracle agreement identified in the Initial Assumption Notice and assume and assign another Oracle agreement (along with some Purchase Orders) identified in the Supplemental Notice.

12.     Debtors apparently chose to completely ignore the fact that Oracle had a pending, unresolved objection which, given the buyer's interesting almost immediate change of heart regarding the Oracle contract designation the day following entry of the Sale Order, should have been set for the promised Cure Objection hearing or somehow otherwise been addressed by the Debtors and the purchaser.

13.     As a result, the record, at present, is extremely muddled given the present inconsistency between the Assigned Contract Notice designation and the default rejection provision under the Plan.

14.     Therefore, given this unanticipated development, Oracle files this Objection and requests that a cure hearing be set in order to resolve the issues raised in its Rights Reservation, which also are set forth in this Objection.

## II.     FACTUAL BACKGROUND

15.     The Debtors filed the above captioned case on October 3, 2023 ("Petition Date"). The Debtors continue to operate as debtors in possession.

16.     On the Petition Date, the Debtors filed the *Debtors' Motion for (I) An Order Pursuant to Sections 105, 363, 364, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets: (B) Approving the Debtors' Entry Into Stalking Horse Agreement and Related Bid Protections (C) Approving Procedures for the Assumption and Assignment or Rejection of Designated Executory Contracts and Unexpired Leases; (D) Scheduling an Auction and Sale Hearing; (E) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (F) Granting Related Relief; (II) and Order (A) Approving the Sale of the Debtors' Assets Free and Clear of Claims, Liens, and Encumbrances; and (B) Approving the Assumption and Assignment of Designated Executory Contracts and Unexpired Leases; and (III) Certain Related Relief* [Dkt. No. 5] ("Sale Motion") which sought Court authority to sell some or substantially all assets of the Debtors.

17.     On November 24, 2023, the Debtors filed the *Notice of (I) Possible Treatment of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto* [Dkt. No. 203] ("Initial Assumption Notice"). Schedule Exhibit A to the Initial Assumption Notice identified one Oracle agreement, described as a Services Estimate #820996 DTD 02/16/2021 ("Initial Oracle Agreement"). This description also includes a stated cure of $0.

18.     On December 15, 2023, the Debtors filed the Agenda and thereafter the Amended

Agenda for the hearing scheduled for December 19, 2023.  Both of these agendas identify Oracle's

Rights Reservation as a "Cure Objection Received" and state that while the Sale Motion is going

forward, the cure objections, including Oracle's, were not, stating:

> Status: This matter is going forward solely with respect to the approval of the
> proposed sales. At this time, the successful bidders have not indicated an intention to
> assume any of the contracts that are the subject of a cure objection. Therefore, the
> pending cure objections are moot. A hearing with respect to objections to the
> Debtors' cure notices will take place at a later date if necessary……

*See*, Amended Agenda at pg. 6.

19.     On December 18, 2023, the Debtors filed the Plan. The Plan states that all executory

contracts not previously rejected, assumed or assumed and assigned will be rejected.  Section 9.1

states:

> On the Effective Date, except as otherwise provided in the Plan, each Executory
> Contract and Unexpired Lease not previously rejected, assumed, or assumed and
> assigned (including any Executory Contract or Unexpired Lease assumed and
> assigned in connection with a Sale Transaction) shall be deemed automatically
> rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such
> Executory Contract or Unexpired Lease: (i) as of the Effective Date is subject to a
> pending motion to assume such Unexpired Lease or Executory Contract; (ii) is the
> Settlement Agreement or a contract, lease, or other agreement or document entered
> into in connection with the Plan; (iii) is a D&O Policy or an insurance policy; or
> (iv) is identified for assumption on the Assumption Schedule included in the Plan
> Supplement. Executory Contracts and Unexpired Leases identified for assumption
> on the Assumption Schedule shall be deemed assumed pursuant to section 365 of
> the Bankruptcy Code as of the Effective Date.

20.     On December 21, 2023, the Court entered the Sale Order [Dkt. No. 288] approving

the sale of substantially all assets to Ginkgo Bioworks, Inc. ("Purchaser").

21.     On December 22, 2023, the Debtors filed a *Supplemental Notice of (I) Possible

Treatment of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object

Thereto* [Dkt. No. 293] ("Supplemental Notice").

22.     The   Supplemental   Notice   identified   the   following   Oracle   agreements ("Supplemental Oracle Agreements").

| Counterparty | Ref. | Contract | Cure Cost |
|---|---|---|---|
| Netsuite, Inc. | 18 | NetSuite Subscription Services Agreement dated as of Mrach 25, 2016, by and between Zymergen and NetSuite, Inc. | $0.00 |
| NetSuite, Inc. | 19 | Purchase Order ZY58994, by and between Zymergen and NetSuite, Inc. | $0.00 |
| NetSuite, Inc. | 20 | Purchase Order ZY63021, by and between Zymergen Inc. and NetSuite, Inc. | $0.00 |

23.     Given Oracle's pending Rights Reservation and the representation in the Amended Agenda that cure objections will be set for further hearing, Oracle did not file a response to the Supplemental Notice since the issues raised in its Rights Reservation remained the same.

24.     As noted above, Oracle's counsel reached out to Debtors' counsel multiple times after the Sale Order's entry to address the treatment of Oracle's contracts, but no substantive response was received until Jan. 24th.

25.     On January 24, 2024 the Debtors filed a *Notice of Filing of Closing Assigned Contracts* [Dkt. No. 329] ("Closing Notice").  The Closing Notice states that the sale closed on January 18, 2023 ("Closing Date") and the Supplemental Oracle Agreements were assumed and assigned to the Purchaser as of the Closing Date.

26.     Oracle immediately wrote Debtors' counsel to object to the purported assumption and assignment.

27.     Given this newly received information Oracle requests that the Court set a cure hearing pursuant to the Debtors' representations in the Agenda and Amended Agenda to address the remaining multiple issues regarding contract designations, cure and the now sought, post-Sale Order entry, assumption and assignment of any of its agreements to the Purchaser.

III.    **ARGUMENT[1]**

    A.    **The Debtors May Not Assume And Assign Oracle's Agreements Absent Oracle's Consent Because They Pertain To Licenses Of Intellectual Property.**

28.    Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

29.    Federal law makes non-exclusive patent licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *In re: West Elec., Inc.) 852 F. 2d 79 (3d Cir. 1988)* (holding that the "provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment.")*, In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that

---

[1] Most of section III herein repeat Oracle's earlier filed objection. This is done not to burden the Court with more reading but in the interest of brevity (having the whole matter set out in one place). Oracle has tried hard to resolve all these issues with the Debtor outside of Court filings and will continue to do so with vigor leading up to the 2/5/24 hearing. If we reach a resolution of any or all issues, we will immediately notify the Court

the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

30.     The Oracle Agreements are, or pertain to, non-exclusive licenses of copyrighted software.  Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not assume or assume and assign the Oracle Agreements without Oracle's consent.

31.     For the reasons discussed herein, Oracle does not consent to the Debtors' proposed assumption or assumption and assignment at this time.

**B.      The Debtors Have Not Adequately Identified The Supplemental Oracle Agreements To Be Assumed and Assigned.**

32.     If the Debtors intend to only assume and assign the Supplemental Oracle Agreements, Oracle will need additional information to enable Oracle to identify the contracts from the Closing Notice.

33.     Multiple Estimates are omitted, and the inclusion of two Purchase Orders only further confuses the effort to identify which contracts are sought.  In some instances, no governing agreement is identified, nor are the contracts identified consistent with Oracle's records.

34.     It is impermissible for the Debtors to segregate the underlying Oracle license agreement from the corresponding support and master agreements for purposes of assumption and assignment, if that is the Debtors' intention. *See, e.g., In re Interstate Bakeries Corporation*, 751 F.3d 955, 961-2 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008).  An executory contract must be assumed in its entirety and "[c]orrespondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract." *In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010) (citing *In re Exide Tech.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)).  Under California law,[2]

---

[2] *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013)

made applicable by the Oracle Agreement, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642.

35.     Because the support agreements and master agreements relate to the underlying license agreements as part of substantially the same transaction, they constitute integrated contracts which may not be separately assumed and assigned.

36.     In order to clarify which Oracle contracts Debtors hope to assume and assign, Oracle requests that the Debtors specify the targeted contracts' (a) identification or contract number; (b) the contract date; (c) any associated support renewals or Estimates; and (d) the governing license agreement, if not already identified.

37.     This information will enable Oracle to evaluate whether the Oracle agreements are assignable, supported, expired, or in default, and, if in payment default, the appropriate cure amount.

38.     Additionally, the information will allow Oracle to assess whether Oracle may accept performance from an entity other than the Debtors.

39.     Oracle reserves its right to be heard on this issue until after the Oracle agreements the Debtors seek to assume and assign are identified with greater specificity.

### C.     The Debtors May Not Have Provided The Correct Cure Amount.

40.     Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1). The Debtors have identified a $0 cure amount for the Supplemental Oracle Agreements.

---

("State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Bankruptcy Code § 365.")

41.     Oracle's records reflect that it is owed not less than $5,220.67.   However, since the Debtors have failed to properly identify the Supplemental Oracle Agreements, Oracle is unable to determine whether additional amounts may be owed.

42.     Therefore, Oracle reserves its right to be heard regarding all cure amounts until it has a better understanding of the agreement(s) the Debtors seek to assume and assign.

**D.     The Debtors Have Not Provided Adequate Assurance of Future Performance By the Assignee.**

43.     Before assuming and assigning any executory contract, the Debtors must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1).

44.     To satisfy Bankruptcy Code section 365(b), Oracle requests that the Debtors provide the following information about the Purchaser and/or the proposed assignee: (a) financial bona fides; (b) confirmation that the purchaser is not an Oracle competitor; and (c) confirmation that the ultimate assignee will (i) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the Oracle executory contract(s) to be assigned; and, if appropriate (ii) enter into an Oracle Master License Agreement.

45.     Absent these assurances, Oracle cannot determine the Purchaser's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform under the terms of the Supplemental Oracle Agreements.

46.     Until the information described above is provided, the Debtors have not complied with the requirements of section 365(b)(1)(C).

**E.     The Supplemental Oracle Agreements Do Not Authorize Simultaneous Use By The Debtors and the Purchaser.**

47.     As was raised by Oracle in the Rights Reservation, attached as Exhibit A to the Sale Order is the Asset Purchase Agreement between the Debtors and the Purchaser, which contemplates that certain services may be provided between the Debtors and the Purchaser.

48.     At section 1.5(C) it states, as follows: "(ii) the Sellers will, and will cause its respective Affiliates to, (x) provide the Purchaser and its Affiliates the maximum allowable use of such Acquired Assets, including by subcontracting, licensing, sublicensing, or establishing an agency type or similar arrangement reasonably satisfactory to the Purchaser and the Sellers under which the Purchaser would obtain, to the fullest extent practicable and permitted by applicable Law, the claims, rights and benefits and assume the corresponding liabilities and obligations with respect thereto" seemingly even in the absence of obtaining what the parties have defined as "Necessary Consents." See APA, Section 1.5(c).

49.     Precise information about the nature of these proposed shared services is not provided. This omission precludes Oracle from determining how, or if, its contracts will be affected. Simultaneous use of, and access to, Oracle's licensed software exceeds the scope of the permitted uses under the Oracle Agreement, and potentially would result in an unauthorized "splitting" of the licenses between the Debtors and the Purchaser.

50.     Oracle objects to the extent that any transitional or shared use arrangement purports to grant to both the Debtors and Purchaser the right to shared use of the Oracle licenses beyond the licenses' terms.

## IV.    <u>CONCLUSION</u>

51.    For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtors' request for authority to assume and assign, transfer or share use of the Supplemental Oracle Agreements, or any Oracle agreement. Oracle reserves its right to be heard further on all issues set forth herein.

Dated: January 26, 2024
Wilmington, Delaware

**MARGOLIS EDELSTEIN**

By:          /s/ James E. Huggett
        James E. Huggett, Esq. (#3956)
300 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 888-1112
E-mail: jhuggett@margolisedelstein.com

Amish R. Doshi, Esq.
**DOSHI LEGAL GROUP, P.C.**
1979 Marcus Avenue, Suite 210E
Lake Success, NY 11042
Tel: (516) 622-2335
E-Mail: amish@doshilegal.com

Shawn M. Christianson, Esq.
**BUCHALTER, A PROFESSIONAL CORPORATION**
425 Market Street, Suite 2900
San Francisco, California 94105-2491
Tel: (415) 227-0900

Peggy Bruggman, Esq.
Benjamin Wheeler, Esq.
**ORACLE AMERICA, INC.**
500 Oracle Parkway
Redwood City, California 94065

**Attorneys for Oracle America, Inc.**